334 So.2d 146 (1976)
Frederick John ROTI, Appellant,
v.
STATE of Florida, Appellee.
No. 75-965.
District Court of Appeal of Florida, Second District.
June 23, 1976.
William L. Camper, Huey & Camper, Tallahassee, Theodore M. Becker, J. Samuel Tenenbaum, Becker & Tenenbaum, and Edward M. Genson, Chicago, Ill., and Joseph P. Garlovsky, Daytona Beach, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Davis G. Anderson, Jr., Asst. Atty. Gen., Tampa, for appellee.
SCHEB, Judge.
Appellant was tried by jury and found guilty of receiving or aiding in the concealment *147 of stolen property contrary to Fla. Stat. § 811.16.[1] He was sentenced to five years in prison with credit for time served. We hold the trial court erred (1) in permitting the state's detective to testify as to prior consistent statements made by one of its chief witnesses who testified at trial; and (2) by allowing the state, on cross-examination of one of the appellant's witnesses, to attack the appellant's character when he had not placed his good character in issue. We reverse.
Appellant Roti purchased a diamond ring from David Blackmer. At trial, Blackmer admitted he had stolen the ring from Jesse Lynn Gilmore. Roti admitted buying it, but he denied knowledge that the ring was stolen. Thus, the primary issue at trial was whether Roti had knowledge that the ring was stolen.
Blackmer testified that his friend, Andy Douglas, suggested they go see a local bar owner named Fred Roti, since Roti might be interested in purchasing the ring. Blackmer testified that he and Douglas went to see Roti at his bar late on a Friday night. According to Blackmer, Roti told them to come back on the following Monday morning. When they returned on Monday, they had a 10 to 15 minute conversation with Roti. Blackmer testified that at that time he told Roti the ring was stolen. Roti testified he did not recall the original encounter, but he did recall the Monday morning meeting with Blackmer and Douglas, at which time he asked them if the ring was "hot." He claimed he was told at that time by Blackmer and Douglas that it was not hot, but rather it was a family heirloom. A defense witness who was in Roti's bar at that time corroborated Roti's testimony on this point. After that meeting, Roti retained the ring to have it appraised, and suggested to Blackmer and Douglas that they return that afternoon after he had an opportunity to secure the desired appraisal. Blackmer testified that he reiterated to Roti at that final meeting on that afternoon that the ring was stolen. Roti, however, testified he again asked if the ring was "hot" and Blackmer and Douglas assured him it was not, whereupon Roti paid them $400 cash for the ring.
Over Roti's objection, the trial court allowed Detective Louis C. Hoss of the Manatee County Sheriff's Office to testify as to prior statements made to him by Blackmer. Detective Hoss was permitted to paraphrase what Blackmer had told him concerning Roti's implication in purchasing the ring. Additionally, a written statement taken from Blackmer while he was in Hoss' custody was admitted. While these prior statements varied somewhat from Blackmer's in-court testimony, they were consistent with and corroborated and strengthened Blackmer's testimony that Roti, at the time he purchased the ring, had direct knowledge that it was stolen.
In Van Gallon v. State, Fla. 1951, 50 So.2d 882, the trial court admitted evidence of a written statement made by the state's principal witness who was present and testifying. There, the Supreme Court in reversing a conviction and ordering a new trial said:
"We recognize the rule that a witness's testimony may not be corroborated by his own prior consistent statement and the exception that such a statement may become relevant if an attempt is made to show a recent fabrication."
No contention was advanced that Hoss' testimony was made necessary by any recent fabrication by Blackmer. There was, however, a direct conflict in testimony as to Roti's "knowledge." And, Blackmer's testimony was crucial to establish that knowledge on the part of Roti. Blackmer was an admitted thief. Further, at time of trial, he was under sentence for a breaking and entering unrelated to this case. His credibility was clearly in question. By permitting Hoss to testify as to Blackmer's *148 prior consistent statements, the state bolstered Blackmer's testimony and cloaked it with a vicarious integrity which undoubtedly enhanced its probative value.
Further, we think the court erred when it permitted the prosecutor, in cross-examining Danny Winstead, Roti's bartender who appeared as a defense witness, to ask Winstead, "Have you ever heard that Freddie Roti buys stolen things?" The defense objected; however, Winstead was permitted to testify, and replied affirmatively, stating that he had heard a lot of things about Roti. During the further dialogue between the prosecutor and Winstead, the witness said he had "frequently" heard that Roti bought stolen things. Obviously, Winstead's testimony on cross was elicited by the state in an attempt to impute knowledge on the part of Roti that the ring he purchased was a stolen one. Moreover, in cross-examination of Roti, the prosecutor reiterated that part of Winstead's testimony. The prosecutor, in final argument, further emphasized Roti's reputation for buying stolen property by reminding the jury that Roti's bartender had testified that he had heard that Roti bought stolen goods. Thus, a serious attempt was made to establish Roti's guilt in the minds of the jury by an unwarranted attack on his character and by subtly establishing in the minds of the jurors that Roti may have committed offenses independent of the crime charged in this case, all based on hearsay evidence elicited from a defense witness. It is fundamental that unless the defendant has first chosen to place his good character in issue, the state is not permitted to attack his character. Jordan v. State, 1932, 107 Fla. 333, 144 So. 669; Andrews v. State, Fla.App.1st 1965, 172 So.2d 505.
The appellant's right to a fair trial was violated and prejudicially so because the trial court permitted the state to bolster the testimony of one of its chief witnesses by introduction of prior consistent statements made by that witness, and further, by permitting a defense witness to testify as to the character of the appellant especially as related to his reputation for committing the type of crime charged against him. In view of our conclusion, it is unnecessary to comment on the other thirteen points briefed and argued by appellant as grounds for reversal of his conviction.
Accordingly, the judgment and sentence are reversed and a new trial ordered.
McNULTY, C.J., and BOARDMAN, J., concur.
NOTES
[1] Renumbered as 812.031 and amended by Laws 1974, c. 74-383, § 41, eff. Oct. 1, 1975.