344 So.2d 641 (1977)
Tim Thomas BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 76-975.
District Court of Appeal of Florida, Second District.
April 15, 1977.
William C. Gregg, III, Clearwater, and Carleton L. Weidemeyer of Wightman, Rowe, Weidemeyer, Jones & Turnbull, Clearwater, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Richard G. Pippinger, Asst. Atty. Gen., Tampa, for appellee.
OTT, Judge.
The appellant was convicted of a violation of Section 800.04, Florida Statutes  specifically a lewd and lascivious act in the presence of a child under the age of 14 years.
The first witness for the state was the police officer who received the complaint of the crime from the mother of the victim. The second witness for the state was the mother of the victim. Over objection, both of these witnesses were permitted to give testimony we find was inadmissible and constituted reversible error. It is, therefore, unnecessary to treat the other assignments of error.
We first address our attention to the testimony of the police officer. After the normal preliminaries the police officer properly testified that the mother of the victim came to police headquarters to report the incident. There then followed this question:
*642 Q. Did [the mother] tell you what happened?
Objection was promptly made but was overruled. The prosecuting attorney then pursued the matter with the following question;
Q. What did she say to you?
After some appropriate comments  not directly responsive to this question  concerning the arrival of the mother at the police station, the personnel present, his own availability and his invitation to the mother to come into his office for the interview, he continued with the following:
A. She stated that her daughter had related to her ...
This was promptly interrupted by further objection by counsel for the appellant. A colloquy occurred at the bench which resulted in the following ruling by the trial judge:
While I think this embodies some of the characteristics of hearsay, I see no prejudice inasmuch as the mother will be here, inasmuch as the State's case is based in a most entire measure upon the testimony we will receive from a child prosecutrix, I am going to allow it, ... Overruled.
Thereafter the police officer was permitted to testify concerning what the victim told the mother as to various details of the actions of the victim and the appellant; where and under what circumstances the incident took place; the mother's statements concerning her own whereabouts and the relationship she had with the appellant (described in brief as a trial marriage); and, even testified that the mother stated that "it had happened one time prior to that"  meaning prior to the incident giving rise to the complaint. He concluded with the information that the victim was not in the room with him and the mother at the time of the conversation.
As stated above, we consider it also necessary to deal with the testimony of the victim's mother. It is important to note that the mother was called  in the first instance  immediately after the police officer. She fixed the date of the incident as the 21st of December, explained her own relationship with the appellant  they had lived together for some eight months  and described the other occupants of the household consisting of the mother's several children by her previous marriages. She ultimately testified to the incident in question. She explained that she left the house on the 21st, a Sunday afternoon, to visit another of her children at a juvenile detention center. She testified she was absent from the home approximately three hours. The defendant, the victim, and two other children of the mother were left in the home. The mother noticed nothing untoward when she returned home that afternoon at approximately 3:30 or 4:00 o'clock. Normal Christmas preparations were then described as taking place over the next couple of days, including the arrival for the holidays of an older daughter from out of town and an older son from military service.
According to the mother's testimony the victim first advised her on the evening of the 23rd that she had something to tell her about the appellant. The mother suggested they discuss it the next morning.
The following morning after the appellant had left for work the mother asked the victim what it was she wanted to tell her about the appellant. The mother testified that the child told her "it was nasty and I wasn't going to like it." There was an immediate objection to any testimony involving statements of the victim which the court overruled "in accordance with the Court's prior ruling."
Then, the mother proceeded to relate not only the fact that the victim reported the incident to her but also graphically related the victim's details as to her own actions and those of the appellant, the fact that the victim related it had happened one other time and then the mother's own conclusions and discussions with others and finally the report to the police.
Thereupon the victim was called as the state's next witness and proceeded to essentially track the recital related by the victim's mother and the police officer.
*643 In Van Gallon v. State, 50 So.2d 882 (Fla. 1951), the supreme court recognized the rule "that a witness's testimony may not be corroborated by his own prior consistent statement and the exception that such a statement may become relevant if an attempt is made to show a recent fabrication." See Roti v. State, 334 So.2d 146, 147 (Fla.2d DCA 1976). The police officer's testimony was clearly violative of the rule and did not fall within the exception. His testimony  the first adduced at trial  had the immediate effect of putting a cloak of credibility upon the succeeding testimony of the mother and the victim.
We think the out-of-court statements of the victim made to the mother some three days after the incident  particularly under the facts and circumstances  falls far short of true res gestae declarations made at the scene of the crime that might justify their admission under the authority of Purdy v. State, 343 So.2d 4 (Fla., filed Feb. 3, 1977).[1] In addition, the net effect of the mother's testimony was to bolster and lend credence to the subsequent detailed testimony by the victim. It tends to establish the acts and facts establishing the alleged crime within the prohibition of Custer v. State, 159 Fla. 574, 34 So.2d 100 (1948).[2]
The judgment of conviction is therefore reversed and the case remanded for a new trial.
McNULTY, Acting C.J., and GRIMES, J., concur.
NOTES
[1] In Purdy, the supreme court held applicable the res gestae exception to the hearsay rule in admitting the testimony of two witnesses as to the 7 year old victim's out-of-court declarations (at the scene of the crime) that the appellant had raped her.
[2] In Custer, the court held that

There can be no doubt of the error in allowing the mother of the girl who was raped to state in detail the circumstances going to prove the crime. It is even more objectionable because the mother relates not merely what her daughter said but from what was told her she drew her own inference and conclusion. .. . 34 So.2d at 112.