DELL, Chief Judge.
Levon Tindall appeals his conviction of aggravated assault with a firearm. He contends the trial court erred when it denied his motion for mistrial following the investigating officer’s testimony that approximately ten unidentified people told him they saw appellant with a gun while threatening his neighbor, Edward Glover. We agree and reverse.
At trial, Mr. Glover testified that after a heated argument with appellant, appellant went inside his apartment, obtained a baseball bat and proceeded to beat on the stairs leading to Mr. Glover’s apartment. Mr. Glover said appellant then re-entered his apartment and returned holding a cloth with something under it. Appellant pulled back the cloth to reveal the barrel of a shotgun. Mr. Glover stated that appellant pumped the gun twice and pointed it at him, but eventually lowered the gun and walked away. Elma Hall, another resident of the apartment complex, also testified that she saw appellant pump the gun twice and aim it at Mr. Glover. The investigating officer testified that he found a shotgun covered by a white towel in appellant’s apartment.
The officer additionally testified that approximately ten people indicated they saw appellant point the gun at Mr. Glover. He first mentioned these witnesses on direct examination:
And I observed that there was some type of disturbance going on and I proceeded to question several individuals to find out exactly what was the problem.
[[Image here]]
At that time, there were several other individuals, approximately — anywhere from nine to 12 other individuals in the area. And I proceeded to question them to find out what was the problem.
The state’s attorney then asked whether he had suspected criminal activity as a result of those conversations. Appellant’s attorney objected to the introduction of the nontestify-ing witnesses’ testimony, and the trial court sustained.
Further into his direct testimony, the officer stated, “Yes, sir, [the gun] was described to us by the witness and some other individuals that refused to give their names.” Appellant’s attorney moved to strike the answer and sought a mistrial. The trial court denied the motion for mistrial, but granted the motion to strike and instructed the jury to disregard the statement relating to the witnesses’ observations.
During cross-examination, the police officer testified:
Q. Let me ask you, is your testimony before these ladies and gentlemen, 10 or 12 other people talked to you about the incident?
A. Yes, Ma’am, they did.
Q. Did you write any of those peoples[’] names down?
A. They refused to get involved.
Q. Do you remember my asking you whether anybody else talked to you about the incident and you saying something different?
A. No. I told you that several other individuals did speak to me about a weapon, but they did not want to get involved.
[[Image here]]
Q. I did, in fact, ask you how many people were out there and you told me, as you said today, eight or 10 people, right?
A. Right.
Q. Then I asked you, “did any of those people — did anybody indicate they saw *131 anything or that they saw my client specifically with a shotgun?” And your answer was, “Nobody wanted to get involved.”
A. Exactly.
[[Image here]]
Q. That’s not what you’re telling me there?
A. That’s what I’m telling you now, that they saw him with a gun. They all stated he did have a gun. And he pointed the gun at the victim and he did state he was going to kill him. But in that area'— See, that area, you don’t — a lot of people don’t want to get involved.
On redirect, the officer again testified regarding the witnesses:
A. There were several people in front of the complex. Somewhere between eight to 10 or more people. And we asked about — We asked several individuals what happened. A lot of them said that he had the weapon, but no one, in asking then.' names, no one wanted to give their names because they didn’t want to get involved.
[[Image here]]
A. In that area, individuals — they all saw what happened, but nobody wanted to give any type of names. They didn’t want to talk—
The officer also volunteered: “They actually saw what happened.” The trial court ordered this comment to be stricken as unresponsive, but again denied a motion for mistrial.
The state does not dispute that the officer’s testimony regarding the unidentified witnesses’ observations constituted hearsay. See §§ 90.801, 90.802 and 90.803(8), Fla.Stat. (1993). The state contends, however, that appellant invited any error by eliciting a major portion of the hearsay testimony on cross-examination. This argument is dispelled with a close reading of the transcript. Appellant’s counsel does not make inquiry into the content of the anonymous witnesses’ statements. Rather, the questions were designed to impeach the officer’s testimony that they told him anything at all. The officer’s statements pertaining to what the witnesses allegedly saw were not responsive to any question posed. Therefore, these comments were not invited. See Czubak v. State, 570 So.2d 925 (Fla.1990).
Alternatively, the state argues any error was harmless because the hearsay testimony was cumulative in nature. We disagree. Juries generally regard police officers as disinterested, objective and highly credible, and thus their testimony is particularly capable of improperly influencing the jury. Kendrick v. State, 632 So.2d 279 (Fla. 4th DCA 1994). The intensive examination of the police officer concerning the substance of what the unidentified witnesses said so pervaded the trial that we can not conclude beyond a reasonable doubt that the officer’s hearsay testimony did not affect the verdict. See State v. DiGuilio, 491 So.2d 1129, 1138 (Fla.1986).
Accordingly, we must reverse and remand this case for new trial.
REVERSED and REMANDED.
POLEN and KLEIN, JJ., concur.