928 So.2d 1265 (2006)
Adrian SANKAR, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-1002.
District Court of Appeal of Florida, Fourth District.
May 24, 2006.
Patrick C. Rastatter of Glass & Rastatter, P.A., Fort Lauderdale, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Melanie Dale Surber, Assistant Attorney General, West Palm Beach, for appellee.
SHAHOOD, J.
This is an appeal by Adrian Sankar, appellant, from a conviction and sentence on the charge of aggravated battery. It was alleged that he struck the victim, Carl Toolsie (Toolsie), in the eye with a bottle. We reverse and remand for a new trial based on the following.
On the night of the incident leading to the charges against appellant in this case, Toolsie was sitting at the bar waiting for a friend when appellant approached and pushed him and "said something about *1266 `getting it on.'" Toolsie told appellant to "leave this thing alone" and turned away from him to order a drink. Before Toolsie could order the drink, appellant pushed Toolsie again. Toolsie turned to walk away, but a friend of appellant held him by the elbow while appellant struck him with a bottle, hitting him in the eye. Toolsie did not actually see what hit him but felt that it was a bottle. He sustained severe injuries to his eye.
Officer Berryman, who responded to the scene within two minutes of receiving the call, found Toolsie with a blood soaked towel on his eye "withering in pain, screaming, `my eye, my eye.'" When the towel was removed, Officer Berryman saw blood running down Toolsie's face, his eye swollen, and part of his eyelash and eyelid "hanging way down." Although there were several witnesses on the scene, they were very uncooperative with the police and did not give any information about the incident. Patrons of the bar, as well the staff at the bar, all said that they did not see anything. Officer Berryman testified, over defense's hearsay objection, however, that one person came forth and that his story, in the officer's estimation, was "consistent with what took place."
Detective Krzepek conducted the follow-up investigation. He reviewed Officer Berryman's report and took a taped statement over the telephone from the one witness who was referenced in the report. The prosecutor asked, without objection from the defense, whether the information received from that witness "corroborate[d] what the victim stated happened." Detective Krzepek said that it did.
On cross-examination, Detective Krzepek acknowledged that he had never met the other witness and had never even seen his driver's license or any other type of identification to verify that he even existed.
Appellant testified that he was standing at the bar waiting to pay his bill when Toolsie said, "it's you," "what about the money you owe my wife." Appellant said that he did not know what Toolsie was talking about and tried to ignore him, but Toolsie began calling appellant a thief and shouting that he had robbed Toolsie's wife. Appellant denied robbing Toolsie's wife and told Toolsie to stop, but Toolsie took a swing at appellant. As Toolsie was approaching appellant "very aggressively," appellant "punched him out." He swung at Toolsie with his right hand, hitting him in the cheek. Toolsie fell backwards on to a table and appellant helped him back up. He then handed Toolsie a napkin for the blood.
Officer Berryman, the original investigating officer at the scene, testified, over defense objection, that one witness' statement was "consistent with what took place." Thereafter, the second officer, Detective Krzepek, who followed up on the investigation testified, without objection, that the witness' statement "corroborated what the victim said happened." In closing argument, the prosecutor highlighted Officer Berryman's testimony, as follows: "Officer Berryman also testified he took down a witnesses' [sic] name, that he took down a witness whose statement as to what happened corroborated and was exactly as to what the victim stated had happened." The prosecutor further highlighted the non-appearing witness' statement, as follows: "[T]hat individual stated the same exact thing that he stated to Officer Berryman and that was that Adrian Sankar struck the victim with a bottle."
In Minnis v. State, 645 So.2d 160 (Fla. 4th DCA 1994), this court reversed the trial court for allowing a police officer to testify over defense objection that he had been told by a witness that she had overheard on the telephone another witness *1267 say that appellant might have committed the crime. Such testimony was inadmissible hearsay.
In addition, this court has held that a victim's statement to a police officer during an interview in the hospital was inadmissible hearsay even though it corroborated the victim's prior consistent statement. See Barnes v. State, 576 So.2d 439 (Fla. 4th DCA 1991). The statement may not come in at trial, especially not through the testimony of the police officer, because it tends to bolster the credibility of the witness. Id. at 439; see also Seibert v. State, 923 So.2d 460, 472 (Fla.2006) (quoting Page v. State, 733 So.2d 1079, 1081 (Fla. 4th DCA 1999)) (holding that "[i]t is especially harmful for a police witness to give his opinion of a witnesses' credibility because of the great weight afforded an officer's testimony"); Peterson v. State, 874 So.2d 14 (Fla. 4th DCA 2004) (holding that detective's testimony that the victim identified appellant as the shooter was inadmissible hearsay and particularly prejudicial because it was offered through a police officer).
Based on the foregoing cases, the trial court in this case erred in allowing Officer Berryman to testify that the statement of the only person on the scene to come forward was "consistent with what took place." Officer Berryman was not present when the incident occurred; therefore, he was not personally familiar with what took place. Presumably, the only information he had at the time of speaking to the anonymous witness was information which had been given to him by the victim because none of the many people who were present would cooperate.
We accordingly reverse and remand for a new trial. Because we are reversing for a new trial, we decline to address all other issues raised by appellant.
Reversed and Remanded for New Trial.
KLEIN and TAYLOR, JJ., concur.